MITCHELL, *treasurer*, &c. *vs.* OSGOOD & ALS.

An action of debt on a foreign judgment, where the plaintiff is not a citizen of this
    State, may be brought in any county in the State.

A judgment rendered in Massachusetts against a citizen of Maine, before the sep-
    aration, may be revived in the same court by *sci. fa.* though the defendant is
    not resident in that Commonwealth ; the jurisdiction of both courts as to pro-
    cesses brought to execute such judgments, remaining unaffected by the separation,
    by *Stat.* 1819, *ch.* 161, *sec.* 1, *art.* 8, adopted into the constitution of Maine,
    *art.* 10, *sec.* 5.

And such judgment will be received by the Courts in this State as conclusive evi-
    dence of debt.

THIS was an action of debt on a judgment rendered by the Su-
preme Judicial Court of Massachusetts, in the county of *Middle-*
*sex,* at *March* term 1824, upon a *scire facias* brought by the Treas-
urer of State, to have execution for the benefit of one *Palmer,* of
a judgment rendered prior to the separation of *Maine,* for the
penalty of the bond of office given by the late sheriff *M'Millan,*

of the county of *Oxford.* The defendants, with one *James Osgood,* deceased, were the sureties of the sheriff, and inhabitants of the county of *Oxford.*

In a case stated for the judgment of the court, the principal facts were these. The bond was given *Feb.* 17, 1812, to the then treasurer of Massachusetts, in the penalty of thirty thousand dollars, with the usual condition for a faithful discharge of the office of sheriff. In *October* 1816, one *Shobal C. Allen* recovered a judgment against the sheriff for nonfeasance in his office. In *February* 1817, the sheriff died, insolvent ; a commission of insolvency was duly issued in *April* following, the proceedings under which were regular; and a dividend of his estate was finally decreed in *March* 1823, after a settlement of the fifth and last administration account. *Allen's* judgment not being satisfied, an action of debt upon the sheriff's bond was duly brought in *Sept.* 1817, against the defendants, by the then Treasurer of State, and judgment rendered in his favor for the penalty, at *October* term 1817, of the Supreme Judicial Court, and execution awarded for the use of *Allen,* for the amount of his debt and costs, being $633,85.

Another suit was commenced in *June* 1816, against the sheriff for his official nonfeasance, by one *David Palmer,* in which judgment was recovered at the Court of Common Pleas in *Middlesex,* at *December* term 1818, against the executors of the sheriff, who had died pending the action. This judgment not being paid, a writ of *scire facias* for the benefit of *Palmer,* was sued out in *May* 1822, by Mr. *Sargent,* then treasurer of State, upon the judgment previously rendered for the penalty of the bond. This writ was returnable to the Supreme Judicial Court in the county of *Middlesex* ; and after several continuances judgment was rendered at *March* term 1824, for the present plaintiff, as successor in office to Mr. *Sargent,* that he have execution for the use of *Palmer,* for the amount of his debt and costs, being $205,90. The execution upon this last judgment being but partially satisfied by one of the bondsmen, the present action was brought upon the same judgment to recover the residue.

In all these suits the defendants appeared and answered. The claim of *Palmer* was never laid before the commissoners on the sheriff's estate, nor reported by them to the Judge of Probate ; nor did it appear that the insolvency was ever suggested by the defendants.

*Deblois*, for the defendants, objected, *first*, that this court, sitting in this county, had no jurisdiction of the cause. The defendants resided in *Oxford*, and the plaintiff in *Massachusetts* ; and the *Stat.* 1821, *ch.* 59, *sec.* 35, which authorizes the bringing of an action of debt on a foreign judgment, speaks only of the county in which the defendants reside, or have attachable estate ; which is not the case here.

2. The claim which this action is brought to enforce, should have been laid before the commissioners on the estate of the late sheriff; and the creditor having failed to do this, the bondsmen are discharged. *Todd v. Bradford* 17 *Mass.* 569.

3. The recovery of judgment in Massachusetts makes no difference in the case, because, being a foreign judgment as to these defendants, its merits are still open to examination. *Bartlett v. Knight* 1 *Mass.* 401. 1 *Caines* 460. *Buttrick & al. v. Allen* 8 *Mass.* 273. *Stevens v. Gaylord* 11 *Mass.* 266.

*Adams*, for the plaintiff. The objection that the action is brought in the wrong county, if well founded, should have been taken in abatement. *Jewett v. Jewett adm'r.* 5 *Mass.* 275. *Tidd's Pr.* 590. It stands upon the same principle with the objection of misnomer, want of indorser, omission of parties in tort, &c. *Hart v. Fitzgerald* 2 *Mass.* 50. *Thompson v. Hoskins* 11 *Mass.* 419. *Haines v. Corliss* 4 *Mass.* 659. *Coffin v. Coffin* cited in *Story's Pl.* 353, *note.* *Cleaveland v. Welch* 4 *Mass.* 591. *Briggs v. Nantucket Bank* 5 *Mass.* 94. *Lawrence v. Smith* 5 *Mass.* 362.

But whatever may be the merit of the objection if taken by plea, it is not open to the party in a case stated for the opinion of the court ; for such statement is taken as a waiver of all objections not going to the gist of the action. *Portland Bank v. Stubbs* 6 *Mass* 425. Nor is this objection supported by the facts con-

tained in the statement ; for it does not appear that the defendants had not any attachable estate in this county. See also *Ruggles v. Patten* 8 *Mass.* 480. *Converse v. Symmes* 10 *Mass.* 377. *Barstow & al. v. Fossett* 11 *Mass.* 250.

But the action is not brought in the wrong county. The plaintiff being a citizen of another State, might elect his county ; and such was manifestly the intent of the legislature. The ninth section of the statute cited, which makes provision for the bringing of all transitory actions in the county where one of the parties live, applies only to cases where both parties reside within the State. Plaintiffs who are citizens of another State have always been considered as not within its provisions. And the language of the thirty fifth section, which permits actions on foreign judgments to be brought in the county, where *either* of the parties live, as it evidently regards citizens of this State alone, ought to re- ceive a similar interpretation. Such has been the construction given by the courts in Massachusetts to the statutes of that Commonwealth, from which our statute is copied. *Day & al. v. Jackson & al.* 9 *Mass.* 237.

As to the defendants' second objection ; the original suit by *Palmer* being pending at the time of the sheriff's decease, the proper course was to have liquidated the demand by proceeding to judgment, before laying it before the commissioners. And if the defendants would avail themselves of the insolvency it was their duty to have suggested it in the former suit. Besides, this objection, if valid, should have been taken in abatement in that suit, admitting the justice of the demand. It comes now too late. *Hunt v. Whitney* 4 *Mass.* 624. *Moore v. Eames* 15 *Mass.* 312. *Thatcher v. Gammon* 12 *Mass* 268.

Nor is this a foreign judgment. This point is considered as settled by the cases *Bissell v. Briggs* 9 *Mass.* 462. *Jacobs v. Hull* 12 *Mass.* 25. *Commonwealth v. Green* 17 *Mass.* 545. And if the judgments of other States in the Union were generally to be treated as foreign judgments, yet the relation of Maine to Massachusetts at the time when the original judgment in this case was rendered, constitutes an exception to such rule. The records of the courts of the parent state prior to the separation, ought to

be treated as domestic proceedings, within the meaning of the eighth article of the terms and conditions in the act of separation.

*Fessenden,* in reply, said that if the language of the ninth section of the statute was broad enough to include the case at bar, it was qualified by the thirty fifth, which is in the nature of a proviso ; and both taken together amount to this, that in debt on a foreign judgment, the defendant shall be sued in his own county unless the plaintiff is an inhabitant of this State, in which case the suit may be brought in the county of the plaintiff.

The benefit of the objection is not waived by the statement. The rule adverted to in the case of the *Portland Bank vs. Stubbs* applies to matters of form only, not appearing in the statement itself. But here the very object of presenting the facts in the statement is, that this objection should be considered and decided by the court. It was not necessary to plead it in abatement; for being apparent on the record, it may be pointed out and relied on in any stage of the cause. *Jacobs v. Mellen* 14 *Mass.* 134. It cannot be waived even by consent of parties, so as to confer a jurisdiction not otherwise existing. *Coffin v. Tracy* 3 *Caines* 129. The cases cited on the other side have no application here, because in them the want of jurisdiction was not apparent on the record ; except in the case of *Lawrence v. Smith,* which proceeds wholly on the ground that in cases like the present a plea in abatement is unnecessary.

This argument having been heard in *April* last at the adjourned term of this Court, the opinion of the Court was now delivered by

Mellen C. J. In *October* 1817, judgment was recovered against the defendants for the whole penalty of the bond, which they and *Osgood* had signed as the sureties of *McMillan.* *Allen,* a creditor of *McMillan,* had execution for a part of said penalty. Afterwards *Palmer,* having obtained a judgment against *McMillan's* executors, sued a *scire facias* against the defendants to obtain satisfaction of his judgment also out of said penalty; and in *March*

1824 obtained judgment and had execution in the name of *Sargent*, treasurer ; a part of this sum was paid on the execution, and the present action of debt is brought in the name of the present treasurer to obtain payment of the residue.   In all the actions before named the defendants appeared and defended ; the last *scire facias* was served on the defendants in Oxford county in this State. First it is said this action should have been commenced in the county of Oxford, where the defendants reside; and that as this irregularity appears on the record, the court must take notice of it without a plea in abatement.   The validity of the objection depends on the construction to be given to the 9th and 35th sections of the statute of 1821 ch. 59.   By the 9th sect. when the plaintiff and defendant both live within this state, all personal or transitory actions shall be brought in the county where one of the parties lives ; otherwise, the writ shall abate.   The 35th sect. provides that an action of debt may be brought on a judgment rendered by a court of record in any other of the United States, in any court of record of this state, holden for the county in which either of the parties to such judgment shall dwell or reside.   So also the 34th section provides that an action of debt may be brought on a judgment of a court of record of this state in the county where either of the parties to such judgment shall dwell and reside at the time of bringing the action, or in the same court where it was rendered ; the language is the same in both sections as to the locality of the action in respect to the parties.   We do not perceive any direct repugnance of either of these sections to the 9th section, which should require of us to give them a different construction upon the point in question, where no perceptible reason can be assigned for the distinction.   To make such a distinction between transitory actions only serves to impair the symmetry of our system of law on the subject; and in a case, too, where the Legislature may fairly be considered not to have intended any such distinction.   It seems more to comport with their design to construe the several provisions before mentioned as affecting the character of all transitory actions in the same manner and to the same extent as to the particular under consideration.   This construction renders it unnecessary for us to

decide whether a plea of abatement was necessary ; or, if so, whether the advantages of such a plea are waived by such a statement of facts as that before us.

The second objection is that the judgment on the last *scire facias*, recovered in 1824 against the defendants, is not binding here, inasmuch as the court in Massachusetts had no jurisdiction over the defendants, living at the time in this state; that though process was served on them in the county of Oxford, and they in person or by attorney attended the court in Massachusetts, still that such attendance gave the court no jurisdiction, as they had none at the time the suit was commenced; and the case of *Bissell v. Briggs* 9 *Mass.* 462, is cited as establishing these principles. Waiving for the present, all further inquiry as to the correctness of this argument, it may be of importance to examine the subject in another point of view. By the 6th section of the act of Massachusetts of *March* 1, 1799, in an action on a bond with penalty, judgment, when rendered for the plaintiff is to be rendered for the whole penalty ; and such judgment is to stand as a security for further damages to which the plaintiff may be entitled ; which further damages are to be ascertained on a writ of *scire facias* on said judgment, from the court where the same was obtained ; such is the law applicable to all bonds. The act of Massachusetts of *March* 13, 1806, regulates the proceedings to be had upon sheriff's bonds for the use of any person or persons who are or may be entitled to the benefit of the same ; but it does not alter the nature of the judgment to be entered in a suit on such bond ; but prescribes the sum for which a creditor shall have execution, after the amount of his claim against a sheriff, his executors or administrators, has been legally ascertained. Thus the law stood at the time " an act relating to the separation of the District " of Maine from Massachusetts Proper and forming the same " into a separate and independent State" was passed, on the 19th of *June* 1819. Several of the provisions of this act are incorporated as a part of our constitution ; among which is the following. " And the rights and liabilities of all persons shall " after the said separation, continue the same, as if the said District was still a part of this Commonwealth, in all suits pending,

Mitchell *v.* Osgood & als.

" or judgments remaining unsatisfied on the fifteenth day of March
" next, where the suits have been commenced in Massachusetts
" Proper and process has been served within the District of
" Maine ; or commenced in the district of Maine and process has
" been served in Massachusetts Proper, either by taking bail,
" making attachments, arresting and detaining persons, or other-
" wise. where execution remains to be done ; and in such suits,
" the courts within Massachusetts Proper, and within the pro-
" posed state, shall continue to have the same jurisdiction, as if
" the said district still remained a part of the Commonwealth."
We are bound to presume that those who drew and arranged the
provisions of this interesting act, and the Legislature that enacted
it, well knew and duly considered the provisions and principles
of the acts of 1799 and 1806 above mentioned; that they well
knew and duly considered the manner in which any creditor
who had suffered by the misdoings of a sheriff or his deputies,
could legally avail himself of the benefit and security of the
official bond of such sheriff ; and that they did not intend to render
those provisions less effectual and certain, contained in those two
acts. Indeed, the division of a state is of such rare occurrence ;
and the partition of a general jurisdiction of so much importance
to those whose interests are involved in such partition, we appre-
hend that a liberal construction ought to be given to those provis-
ions, professedly introduced for their protection. The judgment
for the penalty of the bond in question was rendered in 1816,
years before the act of separation was passed;—a portion of that
penalty had on *scire facias* been appropriated to the use of *Allen* ;
the residue remained liable to satisfy the legally ascertained
claims of other suffering creditors to be appropriated to their use
upon *scire facias*, as provided by the act of 1799. At the time
Maine was separated from Massachusetts, the judgment for the
penalty of the bond, rendered in 1816, remained unsatisfied for
five sixths of its amount, and the only mode of satisfaction pointed
out by the act of 1799 was by the process of *scire facias*, which in
such a case as this must be brought in the name of the State
Treasurer, though for the use of a creditor. Now it is well set-
tled that a *scire facias* can issue only from the court having cus-

tody of the record; under the supposed authority of the above quoted provision in the act of separation, the *scire facias,* on which the judgment declared on was rendered, was served on the defendants in this state, by leaving a copy with them ; they understood the law in the same manner as the plaintiff's counsel then did, and, without any coercive process, attended at the court in Massachusetts and defended the action. On this ground, without touching the question as to the validity and effect of judgments rendered in other states, in ordinary circumstances, our opinion is that the judgment rendered on the *scire facias* in *Middlesex,* *October* term, 1824, is to be considered by us as conclusive as it would have been, if Maine had still continued a part of Massachusetts. In support of this construction it may be observed, that the mode by which a creditor is to avail himself of the security of a sheriff's bond is peculiar, depending wholly on the statutory provisions above recited—that manifest inconveniencies would attend any other construction. The judgment for the penalty of the sheriff's bond having been rendered in the Supreme Judicial Court of Massachusetts,that court only, before which the record remains, can know when the amount of that judgment shall have been exhausted by successive appropriations on *scire facias* at the instance and for the benefit of suffering creditors who had substantiated their claims against the sheriff. In addition to all this, we would observe that these successive writs of *scire facias* in case of sheriff's official bonds are not original writs; but processes employed to obtain satisfaction of the judgment for the penalty ; they are, to all pecuniary purposes, to be considered as a continuation of the original action, necessary to enable all concerned for obtaining the fruits and benefits of that judgment which was rendered before, and was remaining unsatisfied, at the time the act of separation was enacted. In support of this principle may be cited the case of *Dearborn v. Dearborn* 15 *Mass.* 316, in which the court decided that a writ of *scire facias* against bail, was not to be considered as a new action ; but a regular step in the collection of the original demand. In fact, unless the plaintiff can avail himself of this mode of proceeding, he is utterly without remedy. This objection, therefore, must not be permitted to prevail.

The remaining objection is that this action cannot be maintained, because the claim of *Palmer* was never laid before the commissioners on the estate of *McMillan* the late sheriff; and in support of the objection the defendants rely on the proviso in the first section of the before mentioned statute of 1806, which is in these words: " Provided however, that no such suit shall be " instituted by any person for his own use, until such person shall " have recovered judgment against the sheriff, his executors or " administrators, in an action brought for the malfeasance or " misfeasance of the sheriff or his deputy, or for nonpayment of " any monies collected by the sheriff or his deputy, in that ca- " pacity ; or a decree of a judge of probate allowing a claim for " any of the causes aforesaid."—The defendants also rely on the case of *Todd v. Bradford*, Adm'x. 17 *Mass.* 567. Upon examination of that case it is found to differ essentially from this.—There the estate of the intestate was insolvent when the action was commenced ; and that fact was pleaded in bar, and admitted by the demurrer. The court thereupon decided that the plaintiff had not maintained his suit, as he had not filed his claim before the commissioners, and therefore could proceed no further, though his object was merely to obtain a judgment as the basis of a claim against the sureties of the intestate. The facts in the case before us are far different from these. At *December* term 1818, at the C. C. Court of Common Pleas in *Middlesex*, *Palmer* recovered judgment against the estate of *McMillan* in the hands of the executors of his will, for $156,58, damages and costs ; the executors not pleading the insolvency of the estate, or disclosing any fact on the record, intimating that such insolvency existed; and it further appears that in the action of *scire facias*, instituted in *January* 1822, and on which judgment was rendered in *March* 1824, no defence grounded on the insolvency of *McMillan's* estate, was then made ; nor any intimation to the court that such a fact existed or had been represented to the Judge of Probate ; but the defendants suffered judgment to be rendered in common form against them, and execution to issue for the sum of $236,24. Now, it is a general rule and well settled principle, that upon a *scire facias*, or in an action of debt upon

judgment, no defence can be admitted which existed prior to the judgment ; as was decided in *Thacher & al. v. Gammon* 12 *Mass.* 268. The case of *Sturgis v. Reed ad'r* 2 *Greenl.* 109, seems directly in point ; and the judgment, therefore, of *Palmer*, against the representatives of *McMillan*, is not affected by the insolvency of his estate. The claim has been ascertained by judgment of law ; and that is sufficient, according to the terms of the proviso in the act of 1806 ; no other ascertainment is necessary. The present action is therefore sustainable, by means of which to recover of the defendants a portion of the penalty for which judgment has been rendered, equal to the amount of the balance now due, of the sum for which execution was ordered in *March* 1824, for the use of *Palmer.* The result of this investigation is that the action is maintainable, and the defendants, according to the agreement of the parties, must be defaulted.